1

2

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5

6  UNITED STATES,                               No. CR 11-777 PJH (DMR)

7          Plaintiff,                           **ORDER RE PARTIES' JOINT
                                                 DISCOVERY LETTER [DOCKET NO.**
8  v.                                           **20]**

9  DARRELL ARMSTRONG,

10         Defendant.
   _____/

11

12        Before the court is the parties' joint discovery letter of September 21, 2012.  [Docket No. 20.]

13  The parties' disputes focus on the information Defendant may obtain about the confidential

14  government informant who would serve as the lead witness against Defendant in the case.  The court

15  held a discovery hearing on September 26, 2012.  This order memorializes the rulings made at the

16  hearing.

17                              **Background**

18        On October 20, 2011 the government filed an indictment against Defendant, charging him

19  with a violation of 21 U.S.C. §§ 841(a)(1) and 860, for knowingly or intentionally possessing and

20  possessing with intent to distribute a controlled substance within 1000 feet of a school.  [Docket No.

21  1.]  During the discovery hearing, the parties agreed that a confidential informant ("the CI"), was

22  instructed by agents to seek out individuals selling narcotics as a part of a federal law enforcement

23  effort entitled Operation Safe Schools.  The CI allegedly purchased $40 of crack cocaine base from

24  Defendant in August 2011.  The government conceded that the testimony of the CI will be central to

25  its case, as the CI is the sole percipient witness to the single alleged criminal transaction.  Because of

26  the CI's centrality to the case, Defendant moves the court to compel the government to provide

27  discovery about the CI.  The court addresses Defendant's requests in turn.

28                              **Discussion**

**1. The Informant's Identifying Information**

Defendant asks the court to compel the government to turn over the present location, current address, phone number, and Social Security Number of the CI so that Defendant may begin investigating the CI's reputation for truthfulness in the community and other factors that may shed light upon the CI's credibility. The government opposes divulging most of this information at this time. However, it offers to provide Defendant with the CI's name and to make the CI available for an interview with defense counsel if the CI agrees to participate, and with the presence of a government agent.

The Ninth Circuit has recognized that in cases where an informant is a principal witness, such as in this matter, the government must provide the defense with the informant's identity; the only question is a matter of when. *See United States v. Hernandez*, 608 F.2d 741, 744-45 (9th Cir. 1979) (citing *Roviaro v. United States*, 353 U.S. 53, 77 (1957)) (quotation marks omitted). The Court also has recognized that "the address of a principal witness," such as the CI, "is an integral element of identity for without such information, little meaningful inquiry can be made into background information affecting credibility." *Id.* at 745 (citing *Smith v. Illinois*, 390 U.S. 129, 131 (1968); *Alford v. United States*, 282 U.S. 687, 693 (1931)); *see Smith*, 390 U.S. at 131 ("[W]hen the credibility of a witness is in issue, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives. . . . To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.") (footnote omitted) (quotation marks omitted).

The government may justify the non-disclosure of an informant's identity and address before trial where the government or informant demonstrates that disclosure "might subject the witness to harassment, humiliation, or danger." *Hernandez*, 608 F.2d at 745 (citing *United States v. Harris*, 501 F.2d 1, 9 (9th Cir. 1974)); *accord United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001). The court must balance "the extent to which pre-trial disclosure would be helpful to the defendant and the government's interest in protecting the informant." *Abonce-Barerra*, 257 F.3d at 969 (citing *United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993)); *accord United States v. Anderson*, 509 F.2d 724, 728 (9th Cir. 1975) (citing *Roviaro*, 353 U.S. at 58-62).

1    During the discovery hearing, the government conceded that the CI is not fearful of any

2   harassment, humiliation or danger.  The government and CI's primary concerns are that release of

3   the identifying information may render the CI less useful and effective to law enforcement in the

4   future, and would thus also impede  the CI's employment prospects as a confidential informant.

5   While the court recognizes these concerns, they do not counsel against releasing the information

6   prior to trial, and may be mitigated through an appropriate protective order.  The court therefore

7   orders the government to immediately provide the CI's name and birth date.  This information shall

8   be provided pursuant to a protective order ("the Protective Order"), which grants access solely to the

9   defense team (and not Defendant),  mandates that the information be kept confidential, prohibits use

10  of the information outside of this case, and requires the defense team to take reasonable steps in

11  conducting the investigation to protect the CI's identity as a CI.[1]  The court further ordersthat the

12  government shall produce the CI's then-current address and personal telephone number to defense

13  counsel two weeks prior to trial, and subject to the Protective Order.

14       **2. Other Information Relevant to the Informant's Credibility and Motivation**

15       At the hearing, the government represented that in the past two years, the CI has participated

16  in other buy/walk operations as part of Operation Safe Schools, as well as in similar investigations

17  ("investigatory purchases").  In addition, during the same time period, the CI purchased drugs on

18  numerous occasions in order to obtain samples for government testing (non-investigatory

19  purchases).  Defendant argues that he is entitled to information about the CI's work for law

20  enforcement which may illuminate the CI's credibility and motivations.  For example, Defendant

21  argues that the number of times the CI has participated in undercover "buy" operations goes to the

22  CI's ability to recall the specifics of this particular sale more than one year after the fact.  Defendant

23  also argues that information regarding the frequency of the CI's participation, as well as the

24  remuneration, may shed light on the CI's motivation for testifying against Defendant.

25       Defendant's requests include the number of times and specific dates that the Informant

26  participated in buy/walk operations as a part of the Operations Safe Schools initiative; a list of all

27

28       [1]  The parties agreed to meet and confer to draft a stipulated protective order that is consistent
with the rulings on this motion.

3

cases in which the CI has participated and testified in federal and state court; information about monetary expenses, immunity or sentencing promises, or other forms of intervention that the government may have provided the CI in return for cooperation;[2] and details on any occasions when the government discovered that the CI had acted untruthfully or dishonestly, including during cross-examination or when the government decided not to issue warrants based upon the CI's statements. Defendant also requests copies of any presentence and probation reports; details about any prior bad acts, including arrest and conviction records; and any polygraph records the CI may have. The government objects to releasing materials concerning the CI's prior work as a confidential informant as irrelevant, overbroad and burdensome, but agrees to produce information relating to the present case. The government also offers to provide information about any known past instances of the CI's dishonesty or unreliability, as well as the CI's arrest and criminal records, but declines to produce presentence or probation reports, polygraph results, or information on "bad acts" that go beyond what it has already agreed to produce.

Due process requires that the government in any prosecution turn over to the defense all "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976); *Brady v. Maryland*, 373 U.S. 83, 87(1963)). This duty "encompasses impeachment evidence as well as exculpatory evidence." *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "[E]vidence bearing on the credibility of government witnesses" constitutes material evidence for this purpose and, therefore, is subject to disclosure. *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (citing *Bagley*, 473 U.S. at 676; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972)).

The information requested by Defendant generally bears on the CI's credibility and motivation. However, some of the requests are overbroad or burdensome as stated. Thus, the court

---

[2] During the hearing, the government represented that the CI only receives monetary compensation. For that reason, Defendant withdrew his request for information regarding other forms of consideration, without prejudice to renewing it should facts come to light indicating that the CI benefitted in other ways.

1  finds that the following items are appropriate tailored to the needs of the case, and orders  the

2  government to immediately produce the following, all subject to the Protective Order:

3  •       The number of times the government used the CI in buy/walk operations in Operation Safe

4          Schools in 2011 and 2012, and the dates of those operations;

5  •       The number of times and the dates on which the CI was involved in other federal

6          investigatory purchases from June 2011 until trial;

7  •       An estimate of the number of federal non-investigatory purchases the CI made from June

8          2011 until trial;

9  •       Testimony given by the CI in federal cases, along with the names of those cases;

10 •       Any polygraph results;

11 •       The monetary compensation that the CI has received for  work with the federal government

12         in 2011 and 2012; and

13 •       The CI's record of criminal arrests and convictions.   record.

14 **3. The Informant's Statements Related to This Case**

15        Defendant requested that the government produce all of the government witness statements

16 prior to trial.  Although both parties recognize that pursuant to the Jencks Act, 18 U.S.C. § 3500,

17 such statements are not discoverable until the witness has testified under direct examination, the

18 parties also acknowledged that the practice in this district often results in prior production as a

19 matter of efficiency in case management.  Both parties agreed to accede to the trial judge's

20 preference in this matter.  Judge Hamilton requests that the government produce its *Jencks* materials

21 no later than three weeks before the commencement of trial.

24        IT IS SO ORDERED.

26 Dated:  September 28, 2012



IT IS SO ORDERED

Judge Donna M. Ryu

DONNA M. RYU
United States Magistrate Judge

5