UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES,

        Plaintiff,

  v.

DARRELL ARMSTRONG,

        Defendant.
_____/

No. C 11-777 PJH (DMR)

**ORDER DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION**

On September 28, 2012, the court issued an order instructing the government immediately to provide defense counsel with the name and date of birth of the confidential government informant ("CI") who is the key witness in this case. The court further ordered the government to provide the defense with the CI's then-current address and phone number two weeks' prior to trial. The court ordered that all of the CI's identifying information be produced subject to a protective order. [Docket No. 25.][1]

The government did not seek a stay and has not complied with much of the September 28, 2012 order. Instead, on October 9, 2012, the government filed a motion for reconsideration of the court's order to disclose the CI's date of birth, address, and telephone number. The government asserts that new information demonstrates that "the discovery of such information will jeopardize the

---

[1] The court ordered disclosure of other information regarding the CI. [Docket No. 25 at 4-5.] The government does not seek reconsideration of any of those rulings.

safety of the confidential informant, and will subject the confidential informant to harassment, humiliation and danger." (Pl.'s Mot. Recons. 2.) Defendant opposes the motion on numerous grounds. (*See generally* Def.'s Opp'n.) The court set the matter for immediate hearing, but rescheduled oral argument for October 16, 2012 at the parties' joint request. For the reasons stated below, the court denies the motion for reconsideration.

## I. Background and Procedural History

On October 20, 2011, the government filed an indictment against Defendant, charging him with a violation of 21 U.S.C. §§ 841(a)(1) and 860, for knowingly or intentionally possessing and possessing with intent to distribute a controlled substance within 1000 feet of a school. [Docket No. 1.] During the discovery hearing, the parties agreed that DEA agents instructed the CI to seek out individuals selling narcotics as a part of a federal law enforcement effort entitled Operation Safe Schools. The CI allegedly purchased $40 of crack cocaine base from Defendant in August 2011. The government concedes that the testimony of the CI is central to its case, as the CI is the sole percipient witness to the single alleged criminal transaction. The defense pointed to significant weaknesses in the government's case. For example, the person who sold drugs to the CI was identified as a Black male adult with an approximate height of 5' 5", but Defendant is 6' tall. The defense also noted that the CI had made numerous purchases as part of Operation Safe Schools, and it was therefore questionable that the CI would remember the details of any single, minutes-long transaction. Because of the centrality of the CI's credibility and testimony in this case, Defendant moved the court to compel the government to provide discovery about the CI.

The court held a discovery hearing on September 26, 2012, during which the government repeatedly conceded that (1) the CI's testimony was central to the case and (2) the CI was not fearful of any harassment, humiliation, or danger. The government and CI's primary concerns were that release of the identifying information may render the CI less useful and effective to law enforcement in the future, and would thus also impede the CI's employment prospects as a confidential informant. The government argued that in lieu of turning over the identifying information, it would ask the CI to participate in an interview with defense counsel. However, the defense argued that such an interview would not provide an adequate investigatory opportunity, because the CI could

choose not to appear or not to answer questions, and in any event, the investigation would be hampered by the presence of government representatives.

While the court recognized the government's concerns, it found that they did not counsel against releasing the information prior to trial and that any residual concerns could be mitigated through an appropriate protective order. Among other things, the court therefore ordered the government to immediately disclose the CI's name and birth date, subject to a protective order which grants access solely to the defense team (and not Defendant), mandates that the information be kept confidential, prohibits use of the information outside of this case, and requires the defense team to take reasonable steps in conducting the investigation to protect the CI's identity as a CI. The court ordered the parties to meet and confer to draft a protective order consistent with the court's ruling. The court also ordered the government to produce the CI's then-current address and personal telephone number to defense counsel two weeks prior to trial, subject to the protective order. [Docket No. 25 at 3.][2] On October 9, 2012, the government filed the present motion for reconsideration of the court's ruling concerning the release of the CI's identifying information, [Docket No. 37], along with two sealed declarations from an Oakland police officer and the CI. [Docket No. 43.]

## II. Legal Standards

The Federal Rules of Criminal Procedure do not expressly allow for motions for reconsideration. *United States v. Berg*, No. 09-17, 2011 WL 5834035, at *1 (D. Guam Nov. 18, 2011) (citing *United States v. Hector*, 368 F. Supp. 2d 1060, 1062-63 (C.D. Cal. 2005), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir.2007)); *accord United States v. Zhang*, No. CR-05-812 RMW, 2011 WL 4954152, at *1 (N.D. Cal. Oct. 18, 2011). However, this Court examines motions for reconsideration in a criminal case with the same standards applied in a civil context. *United*

---

[2] Defendant states in his opposition that the government has largely failed to comply with the court's order, apart from providing Defendant's counsel with a heavily redacted copy of the CI's rap sheet. (Def.'s Opp'n 4.) The court is concerned by the government's inaction, especially in light of fast-approaching trial date, as well as the fact that the government did not attempt to obtain a stay. The court reminds the government that an order from this court has immediate and continuing effect upon issuance and pending any appeal, unless a court stays or modifies the order. *Tacori Enters. v. Beverly Jewellery Co.*, 253 F.R.D. 577, 584 (C.D. Cal. 2008).

3

*States v. Herrera*, No. CR 08-730 WHA, 2010 WL 4690530, at *2 (N.D. Cal. Nov. 10, 2010) (footnote and citations omitted); *see* N.D. Cal. Crim. L.R. 2-1. A court will grant reconsideration if the movant shows that:

> (1) a material difference of fact or law exists from what was previously presented and the party applying for reconsideration did not know of the difference of fact or law despite reasonable diligence; (2) since the original order, new material facts or law have emerged; or (3) there was a manifest failure by the district court to consider material facts or dispositive legal arguments which were presented to it.

*Herrera*, 2010 WL 4690530, at *2 (footnote and citations omitted).

The government's withholding of an informant's identity "'must give way where his identity is "relevant and helpful to the defense of the accused, or is essential to a fair determination" of his case.'" *United States v. Prueitt*, 540 F.2d 995, 1003 (9th Cir. 1976) (quoting *United States v. Kelly*, 449 F.2d 329, 330 (9th Cir. 1971) (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957))). The Ninth Circuit has recognized that "the address of a principal witness," such as the CI, "is an integral element of identity for without such information, little meaningful inquiry can be made into background information affecting credibility." *United States v. Hernandez*, 608 F.2d 741, 745 (9th Cir. 1979) (citing *Smith v. Illinois*, 390 U.S. 129, 131 (1968); *Alford v. United States*, 282 U.S. 687, 693 (1931)); *see Smith*, 390 U.S. at 131 ("[W]hen the credibility of a witness is in issue, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives. . . . To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.") (footnote omitted) (quotation marks omitted). The government may avoid disclosure of the address of an informant who is a principal witness, though, if the government or informant demonstrates that disclosure "might subject the witness to harassment, humiliation, or danger." *Hernandez*, 608 F.2d at 745 (citing *United States v. Harris*, 501 F.2d 1, 9 (9th Cir. 1974)); *accord Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001).

### III. Discussion

In support of reconsideration, the government points to a material factual difference from what it previously presented to the court. During the original motion hearing, the government conceded that the CI was not fearful of any harassment, humiliation, or danger. The government

4

only expressed concern that release of the identifying information might render the CI less useful and effective to law enforcement in the future and would thus also impede the CI's employment prospects as a confidential informant. Through the submission of the two new sealed declarations, the government now contends that its earlier concession was incorrect. The police officer's affidavit asserts, *inter alia*, that Defendant "has previously possessed a firearm"; that Defendant "associates himself with a number of individuals who are also involved in trafficking narcotics"; that these "associates have possessed and have otherwise illegally carried firearms, and therefore pose a danger to the community." (Officer Decl. ¶¶ 4-6, Oct. 5, 2012.) Consequently, the police officer opines that disclosure of the identifying information "will subject the confidential informant and those close to the confidential informant, to danger, harassment and humiliation, and will jeopardize the safety of the confidential informant." (Officer Decl. ¶ 8.) Similarly, the CI insists that the earlier assertion that the CI had no concerns about personal safety or harassment applied only to the possibility of the CI's testifying in court or attending a personal meeting with Defendant's counsel. (CI Decl. ¶¶ 2-3, Oct. 5, 2012.) The CI now conclusorily states that release of the identifying information will subject the CI and innocent persons close to CI to "retaliation, physical harm, danger, harassment and humiliation." (CI Decl. ¶ 5.)

Although this testimony materially alters the factual landscape that the government presented in its original motion, the court finds that reasonable diligence should have previously alerted the government to this information. The government has long known of Defendant's request for the CI's identifying information, [*see, e.g.*, Docket No. 14 at 5], and had at least three opportunities to present its understanding of the CI's concerns to the court: in the briefing for the underlying motion, [Docket No. 14], in the parties' subsequent joint discovery letter, [Docket No. 20], and during the hearing on the original motion. Nevertheless, the government informed the court in no uncertain terms that the CI had no fear of danger, harassment, or humiliation if the court ordered the release of the identifying information. At the October 16, 2012 hearing on reconsideration, government counsel conceded that he had not specifically asked the CI about any concerns that might arise should the court order the release of the identifying information. When the court asked why counsel had not made these inquiries before submitting the original motion, counsel responded that "never in

my wildest dreams would I imagine a situation in which the court would reveal or demand a disclosure of the Confidential Informant's address. And certainly because of that, I never asked the Confidential Informant whether indeed he would be fearful if the address were indeed disclosed." (Mot. Hr'g 3:56:23-3:56:42 Oct. 16, 2012.) Counsel nevertheless acknowledged that the governing case law authorized the release of identifying information in circumstances where the CI plays a central role and where the record reveals no concerns about the CI's safety or well-being. Thus, it appears that counsel did not exercise reasonable diligence in obtaining the basic factual information because counsel was certain that the government would prevail in its original motion.

The government's tardiness in presenting the CI's concerns to the court strongly weigh against granting reconsideration. However, the court remains sensitive to the safety concerns that the CI and those around the CI may face if the identifying information is divulged, and hesitates to endanger the CI because of the government's lack of due diligence. For this reason, the court examines the new evidence.

The statements of the officer and the CI are quite general. The officer states that he knows that Defendant "has previously possessed a firearm," that Defendant "associates" with certain named individuals who are "involved in trafficking narcotics in this area," that some of the "associates" have "possessed firearms," and that the officer was "informed" that one of the associates had previously tried to pressure a minor to falsely take responsibility for possessing someone else's firearm. From these facts, the officer opines that release of the identifying information would subject "the CI and those close to the CI, to danger, humiliation, harassment and humiliation, and will jeopardize the safety of the CI." (Officer Decl. ¶¶ 4-6, 8.)

The CI expresses only a generalized belief that release of the identifying information will result in "retaliation, physical harm, danger, harassment and humiliation," and will dissuade the CI from future cooperation. The government represented that the CI has worked as a federal CI for approximately fifteen years. The CI's new declaration states that the CI has "regularly been advised and warned by persons that I meet, that they will physically harm me if they learned of my cooperation with law enforcement as a 'snitch.'" (CI Decl. ¶¶ 5-6.) The CI thus has worked as a CI for well over a decade and is fully aware of the inherent dangers involved in that work. Nothing in

the CI's declaration points to any concrete or particularized concerns raised by this case. The CI's fears regarding the release of the address and phone number to the defense team under a strict protective order, while understandable, is speculative. *Compare Hernandez*, 608 F.2d at 744 n.2 (noting that factual record supporting CI's safety concerns included multiple death threats, anonymous hang-up calls, and presence of firearms and ammunition at arrest location), *with* CI Decl.

The government requested that the court conduct an *in camera* interview of the officer and the CI to flesh out the bare-bones declarations. The court's concern, however, is that the government failed to exercise reasonable diligence in preparing the factual record for the original motion. The remedy should not be to permit further augmentation of the record on reconsideration with information the government should have collected and presented in the first instance.

At the hearing on the motion for reconsideration, the court also inquired about the Defendant's criminal history and, in particular, any history related to guns or violence. The government proffered a "rap sheet," but the parties could not agree on its interpretation. The parties do agree to the following facts: Defendant is 21 years old. He has had numerous contacts with the criminal justice system. He sustained two juvenile adjudications. In 2007, he was sent to juvenile hall for second degree burglary. In 2008, he was sent to the California Youth Authority, where he served eighteen months for a second degree robbery charge. He has no adult convictions, but has been arrested for various drug-related charges, including the possession of drugs while armed. Defendant is not currently facing any state charges.

Although Defendant's criminal history is far from pristine, it does not provide a basis for the court to conclude that he presents a threat to the CI's safety, especially given that the court has ordered a strict protective order that would prevent Defendant from obtaining any of the CI's identifying information.

The court asked the government why the specific protective order did not adequately meet any concerns about safety or harassment. The government responded that the CI had a "general belief" that any protective order would be inadequate. The government conceded that it "did not mind a full investigation of the CI by the defense," but was concerned that the manner in which questions were asked would reveal the CI's status and that the government would not be present to

"enforce" the protective order.  Defense counsel represented that the defense would consider any reasonable language to give life to the court's order that the manner of the investigation should not reveal the CI's status as a CI.  Indeed, the court learned that defense counsel had forwarded a draft protective order approximately two weeks prior for the government's review and comment, and that the government had not responded to it because "the DEA was reviewing it."

The court specifically asked the government if there were any modifications to the original disposition of this motion that the court should consider, short of reversal of its original decision, in order to meet the concerns of the CI.  The government responded that there were none.

On this record, and given that the new information should have been presented in the first instance, the court DENIES the government's motion for reconsideration in its entirety.

IT IS SO ORDERED.

Dated:  October 17, 2012



DONNA M. RYU
United States Magistrate Judge

8